Paul J. HERNANDEZ,
Petitioner-Appellant,

v.

UNITED STATES ATTORNEY GENER-
AL, and United States Bureau of
Prisons, Respondents-Appellees.

No. 81–2368.

United States Court of Appeals,
Tenth Circuit.

Sept. 22, 1982.

**916**

Vicki Mandell-King, Asst. Federal Public Defender, Denver, Colo. (Michael G. Katz, Federal Public Defender, Denver, Colo., with her on the brief), for petitioner-appellant.

H. Manuel Hernandez, Sp. Asst. U.S. Atty., Denver, Colo. (Robert N. Miller, U.S. Atty., Denver, Colo., with him on the brief), for respondents-appellees.

Before SETH, Chief Judge, and BARRETT and LOGAN, Circuit Judges.

BARRETT, Circuit Judge.

Paul J. Hernandez (Hernandez) appeals from the district court order dismissing his petition for writ of habeas corpus and for writ of mandamus filed, respectively, pursuant to 28 U.S.C.A. §§ 2241 and 1361. The thrust of Hernandez's challenge is that his due process rights have been violated by virtue of alleged failure of appellees, the United States Attorney General and the United States Bureau of Prisons, to provide him with treatment and rehabilitation required by the Federal Youth Corrections Act (YCA), 18 U.S.C.A. § 5005, et seq.

Hernandez entered a plea of guilty to one count of bank robbery in violation of 18 U.S.C.A. § 2113(d) in the United States District Court for the District of Colorado. Before his sentencing pursuant to that plea, Hernandez was arrested, charged and pled guilty to a Colorado state charge of assault with intent to murder. He was sentenced by the state district court and committed to the Colorado State Penitentiary. While there incarcerated, Hernandez was delivered to the federal district court pursuant to a writ of habeas corpus ad prosequendum on May 14, 1971, where sentence was handed down. Hernandez, then twenty-one years of age, was sentenced to a twenty-two year term under the YCA. The court found Hernandez to be suitable for sentencing under YCA and recommended that Hernandez receive psychiatric care and medical examinations as may be indicated and that he be allowed to complete educational courses for high school and beyond and to receive practical and vocational training.

During the sentencing proceeding Hernandez's attorney explained that: Hernandez was incarcerated in the Colorado State Penitentiary serving a 13–14 year sentence on conviction of the offense of assault with intent to murder; Hernandez was participating in the reading program at the penitentiary which was changing his whole demeanor and attitude; it would be to Hernandez's benefit if the court sentenced Hernandez to the Colorado State Penitentiary "where he is now incarcerated"; the Assistant United States Attorney had stated that he would recommend to the United States Attorney General that Hernandez serve his federal sentence at the Colorado State Penitentiary because Hernandez was obtaining educational benefits and opportunities through some reform organizations there. He concluded by stating to the court that Hernandez was "doing very well" at the Colorado State Penitentiary.

The trial court, after observing that the bank robbery in which Hernandez and three associates participated, involved violent and vicious acts, i.e., the shooting and maiming of an innocent man and shooting of an F.B.I. agent, stated that he would not grant probation and that Hernandez and his fellow defendants "may not be able to derive the maximum benefit from . . . the Youth Correction Division, prior to the expiration of six years from the date of conviction thereof". The court then sentenced Hernandez in these words:

> Mr. Paul Hernandez, it is the judgment and sentence of this court that you be committed to the custody of the Attorney General of the United States or his duly authorized representative and by him imprisoned for the maximum period of 22 years. Now, this sentence is imposed under the provisions of Title 18, United States Code, Section 5010(c), and in addition to the ordinary, regular terms of the

judgment and commitment and order, I recommend that you be given an in-depth psychiatric and medical examination and that you receive such treatment as is indicated. I further request of the Bureau of Prisons that you be allowed to complete educational courses necessary for a high school diploma and beyond that if you are so inclined, and I further recommend to the Bureau of Prisons that you receive during the period of incarceration some practical vocational training during this period.

In the course of post-sentence colloquy between Hernandez's counsel and the court, the judge made it clear that: the sentence being imposed was not concurrent with Hernandez's state sentence for which he was incarcerated; the court could not order a concurrent sentence, but under the YCA Hernandez's federal sentence commenced immediately; the court was aware that Hernandez was presently incarcerated in the Colorado State Penitentiary and it was a matter between the state officials and the Bureau of Prisons as to whether or not custody would be transferred to a federal institution or whether Hernandez would remain in the state institution; the custody matter was one "These officials will have to work ... out. I can't direct that ...."; Hernandez was to receive credit on his sentence immediately.

Hernandez was returned to the Colorado State Penitentiary following his federal sentencing. He escaped from the Colorado penitentiary on January 10, 1972, and was arrested ten days later in Los Angeles, California, charged with first degree robbery. He was convicted of that charge on March 17, 1972, and sentenced by the California state court to a term of five years to life. He was returned to Colorado to complete his sentence there. On January 15, 1974, Hernandez again escaped from the Colorado State Penitentiary. He was recaptured that same day, charged with second degree kidnapping. On July 16, 1976, Hernandez was sentenced by a Colorado state district court to a term of forty to forty-five years, said sentence to run concurrently with his prior Colorado state sentence. Hernandez escaped a third time on August 8, 1974, but apparently was not charged.

Hernandez has a current parole eligibility date from the Colorado State Penitentiary of January 19, 1997. Although he has not been in federal custody, Hernandez has a presumptive parole release date of September 20, 1986, on his federal sentence because, under YCA, that sentence commenced to run from the day sentence was entered.

The district court, in denying Hernandez relief, found and/or concluded: That the matter of Hernandez's place of incarceration following his federal sentence pursuant to YCA was one between Colorado state officials and the Bureau of Prisons; Hernandez did receive some psychiatric counseling and his high school equivalency degree while incarcerated in the Colorado State Penitentiary; Hernandez has at all times been detained and in the custody of officials of the State of Colorado; when a prisoner violates the criminal statutes of two different sovereigns, the determination of custody and service of sentence between them is a matter of comity to be resolved by the executive branches of each sovereign; the place of a federal prisoner's confinement is a matter vested in the discretion of the Attorney General or his authorized delegate pursuant to 18 U.S.C.A. § 4082; the court has no jurisdiction to issue a writ of mandamus to the Bureau of Prisons directing officials of the Bureau to contract with outside authorities to provide additional services to Hernandez while he is in state custody, and further, the court lacks jurisdiction to issue a writ of mandamus to a state court or state prison; the court is without authority to designate where a term of imprisonment may be served, and without jurisdiction to compel a state prison system to handle a prisoner in state custody in accordance with federal statutes.

On appeal, Hernandez contends that the district court erred in refusing to grant him habeas corpus/mandamus relief, inasmuch as his due process rights have been violated by failure of appellees, in the execution of

his federal sentence, to provide him with treatment and rehabilitation programs required by the YCA and the sentence executed pursuant thereto. Specifically, Hernandez asserts that (a) he has a clear right to treatment and rehabilitation programs pursuant to his YCA sentence, (b) appellees have a defined and preemptory duty to provide him with treatment and rehabilitation programs, and (c) in order to be consistent with due process, his YCA sentence must have an effect upon his prior state sentence. We hold that the district court did not err in dismissing Hernandez's petition. We will affirm.

## I.

Appellees advise us that the United States and the State of Colorado agreed that Hernandez was to complete service of his state sentence prior to the federal government taking custody of him pursuant to his YCA sentence. [Brief of Appellees, p. 4].

The writ of habeas corpus ad prosequendum was issued pursuant to 28 U.S.C.A. § 2241. The State of Colorado then had Hernandez under its custody and control at the Colorado State Penitentiary. As a matter of comity, the State of Colorado transferred Hernandez from state incarceration to the federal district court exclusively for the purpose of sentencing, thus according Hernandez expeditious administration of justice. *Lunsford v. Hudspeth,* 126 F.2d 653 (10th Cir. 1942). Colorado state officials did not relinquish jurisdiction over Hernandez, their prisoner, by his production in federal court for sentencing; he continued to be a "state prisoner." *United States v. Mauro,* 436 U.S. 340, 98 S.Ct. 1834, 56 L.Ed.2d 329 (1978); *United States v. Harris,* 566 F.2d 610 (8th Cir. 1977); *United States v. Kenaan,* 557 F.2d 912 (1st Cir. 1977), *cert. denied,* 436 U.S. 943, 98 S.Ct. 2844, 56 L.Ed.2d 784 (1978).

18 U.S.C.A. § 3568 provides that the sentence of imprisonment of any person convicted of an offense [federal] shall commence to run from the date which such person *is received* at the penitentiary, re-

formatory, or jail for service of such sentence. *See Bruss v. Harris,* 479 F.2d 392 (10th Cir. 1973) (where this court held that the accused was not entitled to credit against his federal sentence for time when he was in state custody awaiting disposition of state charges following conviction of a federal crime even though a subsequently imposed state sentence was ordered to run concurrently with the federal sentence.)

In *Hall v. Looney,* 256 F.2d 59 (10th Cir. 1958), we held that when a person is lawfully in custody of one sovereign on a criminal charge, he remains exclusively in the jurisdiction of that sovereign until its jurisdiction is exhausted; however, the sovereign having prior jurisdiction and right to custody may waive that right and permit another sovereign to proceed with its prosecution and execution of sentence.

In *Hayward v. Looney,* 246 F.2d 56 (10th Cir. 1957), we said:

Either the Federal or a state government may voluntarily surrender its prisoner to the other without the consent of the prisoner. Whether jurisdiction and custody of a prisoner shall be retained or surrendered is a matter of comity and is to be determined by the sovereign having custody.

\*      \*      \*      \*      \*      \*

It is well settled that when a state surrenders a prisoner to the Federal government for the purpose of trial on a Federal charge and upon conviction and sentence in the Federal court, the Federal authorities surrender custody of the prisoner back to the state authorities for trial or imprisonment, without the prisoner having been received at a Federal penal institution for service of his Federal sentence, the Federal sentence does not begin to run until such time as the prisoner is returned to Federal custody and received at the Federal penal institution for service of his federal sentence. [Footnote omitted].

246 F.2d at pp. 57–58.

In *Williams v. Taylor,* 327 F.2d 322 (10th Cir.), *cert. denied,* 377 U.S. 1002, 84 S.Ct. 1937, 12 L.Ed.2d 1051 (1964), we said:

... It is well settled that in our two systems of courts, the one which first takes custody of a prisoner in criminal cases is entitled to the custody of the prisoner until final disposition of the proceedings in that court, but during this time the prisoner is not immune from prosecution by the other sovereign .... When a state surrenders one of its prisoners to the federal government for the purpose of trial on charges pending there, a judgment and sentence upon conviction in the federal court does not begin to run, if the prisoner is delivered back to state authorities, until the prisoner is thereafter returned to federal custody and received at a federal penal institution for service of his sentence. 18 U.S.C. § 3568 ...."

327 F.2d at p. 323.

We hold that Hernandez's claim that his due process rights were violated by the agreement between the United States and the State of Colorado that Hernandez was to complete service of his state sentence prior to the federal government taking custody of him is devoid of merit. The law of comity is such that the two sovereigns may decide between themselves which shall have custody of a convicted prisoner; however, the sovereign having prior jurisdiction need not waive its right to custody. *Joslin v. Moseley,* 420 F.2d 1204 (10th Cir. 1970); *Hall v. Looney, supra.* Obviously in the instant case, the State of Colorado, the sovereign with prior jurisdiction, did not waive its right of custody of Hernandez. Furthermore, the agreement between the United States and the State of Colorado that Hernandez be returned to the State for completion of his state sentence was mandatory unless expressly waived by the State. Thus at no time has Hernandez been delivered into the custody of the Attorney General pursuant to 18 U.S.C.A. § 4082. Without custody of Hernandez, the Attorney General was in no position to designate a place of confinement of Hernandez which, of course, is limited with respect to youth offenders by the YCA. In *Watts v. Hadden,* 651 F.2d 1354 (10th Cir. 1981), we said:

Under the YCA, the entire goal is to release a youth offender from confinement once he has reached the point where rehabilitation has been realized and there has been an adjudication thereof .... Because the focus of the Youth Correction Act is on rehabilitating the youth offender, and releasing him once he is rehabilitated, a youth offender sentenced under 18 U.S.C. § 5010(b) or (c) is eligible for conditional release at any time and no minimum sentence is required.

651 F.2d at p. 1376.

*Watts, supra,* also pertinently noted that: Once the youth offender is so sentenced and committed to the custody of the Attorney General, the length of the time the defendant will actually spend in custody is determined solely by the Parole Commission.

651 F.2d at p. 1372.

The trial court was under no misapprehension that Hernandez had simply been "borrowed" from the State of Colorado pursuant to the writ of habeas corpus ad prosequendum. The court, in its order dismissing petition, found:

Since his sentencing on the federal charge, petitioner Hernandez has never been officially received into federal custody. His primary detention has always been by the State of Colorado. He was already serving his state sentence when the federal sentence was imposed, and he continues in state custody for the original and subsequent state convictions.

[R., Vol. I, p. 17].

*Accord: United States v. Campisi,* 622 F.2d 697 (3d Cir. 1980).

*Watts v. Hadden, supra,* stresses the remedial aspects of YCA. Had the custody of Hernandez been surrendered by the State of Colorado to the Attorney General, the Attorney General's authority under 18 U.S.C.A. § 4082 to designate a place of confinement of federal prisoners would have been limited by the YCA and the terms of the district court's sentence. If a youth offender, in the custody of the Attorney General, does not receive treatment as required by

18 U.S.C.A. § 5011 and if the circumstances of his confinement are no different than those of adult offenders, some kind of relief, such as habeas corpus, would seem to be appropriate. These considerations do not come into play here simply because Hernandez was at no time in the "custody" of the Attorney General of the United States or his designee.

18 U.S.C.A. § 5006(e) defines a "committed youth offender" as ". . . one committed for treatment hereunder to the custody of the Attorney General pursuant to sections 5010(b) and 5010(c) of this chapter [18 U.S. C.A. § 5010(b), (c)]."

## II.

Notwithstanding the fact that he was not at any time in "the custody" of the Attorney General following his federal YCA sentence, Hernandez contends that the prerequisites to issuance of a writ of mandamus are clearly established. He insists that appellees have a "plainly defined and preemptory duty . . . to do the act in question" because 18 U.S.C.A. § 5013 authorizes the Director of the Bureau of Prisons to contract with any appropriate public or private agency not under his control for the custody, care, subsistence, education, treatment and training of committed youth offenders. [Brief of appellant, pp. 6, 9–10].

The district court, while recognizing the statute cited, observed:

Hernandez now complains that during his incarceration by the Colorado authorities and his concurrent service of the state and federal sentences, he has never received special educational and vocational programs nor special medical and psychiatric treatment as provided under the FYCA. Apparently, petitioner has received some psychiatric counseling and his high school equivalency degree and recently has applied for a Basic Educational Opportunity Grant. Therefore, his petition is not based on the complete refusal of authorities to provide these services, but that the amount and kind of services received do not rise to the level provided for under the FYCA.

\*    \*    \*    \*    \*    \*

Petitioner would have this court issue a writ of mandamus to the Bureau of Prisons directing them to contract with outside authorities to provide additional services to him while in state custody. Clearly, I have no jurisdiction to issue a writ of mandamus to a state court or prison. See *Middlebrooks v. Thirteenth Judicial District Circuit Court,* 323 F.2d 485 (8th Cir. 1963). Likewise, I cannot do indirectly what I have no jurisdiction to do directly. "Except under exceptional circumstances, internal matters in state penitentiaries are the sole concern of the states and the federal courts will not inquire concerning them." *United States v. Rogen [Ragen],* 337 F.2d 425, 426 (7th Cir. 1964), *cert. denied,* 380 U.S. 985 [85 S.Ct. 1355, 14 L.Ed.2d 277] (1965); *Coppinger v. Townsend,* 398 F.2d 392 (10th Cir. 1968); see *United States v. Tyler,* 269 U.S. 13, 17 [46 S.Ct. 1, 2, 70 L.Ed. 138] (1925).

[R., Vol. I, pp. 16–17].

We agree with the district court's conclusion that "Since I have no authority to designate where a term of imprisonment may be served, nor any jurisdiction to compel a state prison system to handle a prisoner in their custody in accordance with federal statutes" [R., Vol. I, p. 18] that the petition for writ of habeas corpus and writ of mandamus must be denied.

■■ The Attorney General's authority under 18 U.S.C.A. § 4082 to designate a place of confinement is limited by the YCA. In *Watts v. Hadden, supra,* we said that once the district court sentences a youth offender under the YCA and finds that reasonable grounds exist to believe the youth will benefit from treatment under the Act, as here, the youth offender, not conditionally released, must be provided treatment in such institutions and agencies under the control of the Department of Justice as the Director of the Bureau of Prisons shall designate. 651 F.2d at pp. 1357, 1358; 18 U.S.C.A. § 5011. The Attorney General must confine the youth offend-

ers in accordance with the sentence and § 5011; his only discretion is in the placement of the youth offender in those institutions and agencies under the control of the Department of Justice. *United States ex rel. Dancy v. Arnold,* 572 F.2d 107 (3d Cir. 1978); *Brown v. Carlson,* 431 F.Supp. 755 (D.C. Wis. 1977). The agencies and institutions to be designated under § 5011, *supra,* must be certified by the Director of the Bureau of Prisons pursuant to 18 U.S.C.A. § 5012.

18 U.S.C.A. § 5013 provides:

The Director may contract with any appropriate public or private agency not under his control for the custody, care, subsistence, education, treatment, and training of committed youth offenders the cost of which may be paid from the appropriation for "Support of United States Prisoners."

We hold that § 5013 was not enacted for the purpose of authorizing the Director to contract with a public or private agency to provide YCA services for a youth offender not in the custody of the Attorney General. Section 5013, *supra,* is, in our view, authorization to provide such treatment, educational or rehabilitative services deemed proper by the Director which are not otherwise available in an institution or agency under the control of the Department of Justice. In any event, the authorization was intended to be exercised only with regard to youth offenders in the custody of the Attorney General. It was not intended to authorize the Director of the Bureau of Prisons to contract with a state institution for the treatment of a prisoner under the exclusive custody and control of the state.

WE AFFIRM the district court's order dismissing the petition for writ of habeas corpus and for writ of mandamus.