**Francisco RIOS, Petitioner,**

v.

**Ron WILEY, Respondent.**

**No. Civ. 1:CV–98–1507.**

United States District Court, M.D. Pennsylvania.

Feb. 1, 1999.

Francisco Rios, Montgomery, PA, pro se.

Donald Cameron, New York City, for Francisco Rios.

David M. Barasch, U.S. Attorney's Office, Harrisburg, PA, Kate L. Mershimer, Williamsport, PA, Diane Cagino, Office of U.S. Atty., Albany, NY, for Ron Wiley.

## MEMORANDUM

CALDWELL, District Judge.

### I. *Introduction.*

We are considering the respondent's timely filed motion to alter or amend, styled as a motion for reconsideration.[1] The motion seeks review of our order, dated December 8, 1998, granting the petitioner, Francisco Rios, habeas relief. Specifically, the order required the Bureau of Prisons (BOP) to give the petitioner credit for about 22 months he spent incarcerated before the petitioner's federal sentence was imposed.

Denying the credit gives the petitioner a projected release date of August 12, 2000.

---

1. The petitioner's current custodian is not the respondent named above, but Bobby Shearin, the warden at FPC—Allenwood, Pennsylvania, who consents to the jurisdiction of this court.

However, granting the credit means that the petitioner should already have been released because it results in a release date of September 30, 1998. (Respondent's brief in support of reconsideration, at p. 2 n. 1). Thus, the respondent also requested that we stay the December 8 order. In an order, dated December 23, 1998, we granted that request. In the same order, we required the petitioner to file a copy of his sentencing transcript and his presentence report.

## II. *Background.*

The background section of *Rios v. Wiley*, 29 F.Supp.2d 232, 1998 WL 864455 (M.D.Pa. 1998), the memorandum accompanying the order granting habeas relief, can serve as the background for the instant discussion. We would supplement it by only one fact, that the petitioner's federal trial took place from June 15 through June 17, 1992, more than a year and one-half before his federal sentencing. And we would make only one alteration, although a very important one, concerning the related nature of the state charges. The state charges on which the petitioner was incarcerated at the time federal authorities took him on the second ad prosequendum writ were not related to either of the two federal charges for which he is now imprisoned, as recited in that background section, The state charges were indeed based on a narcotics violation, as recited in the original memorandum, but they involved possession of cocaine, (presentence report at ¶¶ 75–76, exhibit to petitioner's opposition brief on reconsideration), not a conspiracy to distribute heroin or possess heroin with intent to distribute, the bases of the two federal charges. As such, the state charges were, properly, not included in the calculation of petitioner's offense level. (Sentencing transcript at p. 5).[2]

## III. *Discussion.*

The respondent first reiterates the arguments he made in opposing habeas relief. We need not deal with those arguments,

finding it more fruitful to focus on the respondent's criticisms of our memorandum.

By way of background, the memorandum was supported by two rationales. First, quoting *United States v. Benefield*, 942 F.2d 60 (1st Cir.1991), we concluded that when a federal sentence is imposed to run concurrently with a related state sentence, it would be illogical not to grant credit for time already served on the state sentence based on the happenstance of when the federal sentencing took place. We believed that this would defeat the intent of the sentencing court in imposing a concurrent sentence.

This rationale was buttressed by a second one, which noted that before enactment of 18 U.S.C. § 3584, a part of the Sentencing Reform Act of 1984, Pub.L. No. 98–473, Title II, 212(a)(2), Oct. 12, 1984, 98 Stat.2000, and the statutory authority for the imposition of a concurrent sentence by a federal court, district courts had no authority to impose a sentence concurrent to a state sentence, citing *Cozine v. Crabtree*, 15 F.Supp.2d 997, 1020 (D.Or.1998) (citing, among other cases; *Gomori v. Arnold*, 533 F.2d 871, 875 (3d Cir.1976)). Instead, under the old law, the BOP had that authority. *Id.* We concluded that:

> This previous authority must now give way to the district court's current authority to impose a concurrent sentence, which includes the implicit requirement that a defendant receive credit on the federal sentence for time served on the related state offense so that the sentences are truly concurrent.

*Rios*, 29 F.Supp.2d at 235, 1998 WL 864455. As support for this rationale, we cited *United States v. Kiefer*, 20 F.3d 874, 876 (8th Cir. 1994), a case involving the application of U.S.S.G. § 5G1.3(b). That sentencing guideline confers authority on district courts to grant credit for time served on a related state offense that has been taken into account in establishing the offense level for the federal offense.

The respondent attacks our reliance on *Benefield* by arguing that *Benefield* is con-

---

**2.** Additionally, the petitioner's presumptive release date, based on BOP calculations, is not, as the BOP had stated and as noted in the original memorandum, February 12, 2000, but, as noted above, August 12, 2000.

trary to the Supreme Court's later decision in *United States v. Wilson*, 503 U.S. 329, 112 S.Ct. 1351, 117 L.Ed.2d 593 (1992). He asserts that *Benefield* granted a double credit for time served on a state offense by allowing it for the federal offense, but that *Wilson* subsequently disapproved of this practice of granting double credit; that is, granting credit on the federal sentence for time spent in detention before the federal sentence is imposed when that time has already been credited to another sentence.

In a related argument, the respondent contends that the BOP has no quarrel with a federal court's authority to impose a concurrent sentence under section 3584, but that section 3584 does not confer authority on a district court to make the sentence retroactive. To the contrary, the retroactivity of a federal sentence is governed by section 3585(b). That section, the respondent argues, confers exclusive authority on the BOP to determine retroactivity by authorizing the BOP to award credit for time served before the federal sentencing. In fact, power in the sentencing court to make a sentence retroactive would endanger the purpose of the Sentencing Reform Act and the Sentencing Guidelines because it would allow the court, whenever it disagreed with the correct sentence, to avoid imposing the proper sentence by making it retroactive to some prior sentence.

The respondent also points out in his reply brief, based on the sentencing transcript, that the state charges were not taken into account in setting Rios's offense level for the federal charges and that section 5G1.3(b) of the sentencing guidelines cannot be the basis of a credit.

Finally, the respondent contends that section 5G1.3(b) rebuts our conclusion that a refusal to grant credit would be arbitrary, based on our view that credit would then depend on the happenstance of the date of the federal sentencing. Under that guideline section, if a defendant is serving time on an offense that has been taken into account in establishing the offense level for his federal offense, he can receive a reduction in his sentence for the time served before the federal sentence is imposed. Respondent argues that petitioner could have sought such a reduction but did not do so and did not qualify for one in any event. Hence, the sentencing guidelines have already taken into account this "happenstance" factor, and we are not at liberty to craft another one.[3]

In his opposition brief to the reconsideration motion, Rios attempts to distinguish *Wilson, supra,* and reiterates an argument he made in his original briefing, but one we did not think we had to address. Under *Brown v. Perrill,* 28 F.3d 1073 (10th Cir. 1994), *supplementing and clarifying* 21 F.3d 1008 (10th Cir.1994), he argues he was held for so long under the second ad prosequendum writ that this period became federal custody for which he is entitled to credit on his federal sentence. He also contends that refusal to give him credit would violate due process because his sentencing was delayed so that he could assist federal authorities in other prosecutions.

After review of the parties' submissions, we conclude that we can no longer rely on *Benefield* to support our order. Nonetheless, for the reasons set forth below, the petitioner is still entitled to credit for the approximately 22–month period he spent with federal authorities on his second ad prosequendum writ.

The respondent reads our memorandum as expressing our belief that section 3584 conferred implicit authority on the sentencing

---

3. There is an element of happenstance because service of the federal sentence cannot begin earlier than the date of federal sentencing. Thus, the sooner a defendant is sentenced, the sooner he begins serving the federal sentence which, if imposed concurrently with another sentence, will run, at least partially, at the same time as the other sentence. Thus, if the petitioner here had been sentenced, for example, on January 31, 1993, rather than January 31, 1994, the BOP would have included this time in calculating his scheduled release date, resulting in a release date one year earlier. However, simply because sentencing did not occur until the latter date (petitioner asserts ironically because he was cooperating with federal authorities), the BOP will not use this time in its calculation because it represents both prefederal sentencing time and time already credited to the state sentence, and thus subject, in the BOP's view, to the prohibition of double credit under section 3585(b).

court to impose a retroactive concurrent sentence. This is a fair reading of the memorandum, but we were really influenced, as evidenced by our citation to *United States v. Kiefer*, 20 F.3d 874, 876 (8th Cir.1994), by the petitioner's assertions, uncontested by the respondent, that the state drug charges were related to at least one of the federal drug charges. In Rios's words, the federal and state charges "arose out of the same operative conduct." (Memorandum in support of habeas petition at p. 2).

■ Since the charges were thought to be related, and since the sentencing court had imposed a concurrent sentence and, moreover, had granted petitioner credit for time served, we assumed that section 5G1.3(b), or grounds for its application, were lurking in the record somewhere, and that based on the scheduled release date (then represented to be February 12, 2000) and the length of the credit at issue (some 22 months), relief should be granted immediately.

However, as the sentencing transcript and presentence report indicate (submitted for the first time on reconsideration by the petitioner), the state charges were not related to any of the federal ones, the state charges were not taken into account in setting the federal offense level and section 5G1.3(b) does not apply here.

■ In these circumstances, *Benefield* would also not apply because in that case the state charges (armed robbery) were related to the federal charge (felon in possession of a firearm). In this regard, we also agree with the respondent that the district court's authority under section 3584 to impose a concurrent sentence does not by itself also include the authority to make it retroactive either directly or by granting a sentence credit. The respondent correctly observes that such an interpretation would allow a district court to impose a sentence it thought was appropriate rather than the one called for by federal law and the Sentencing Guidelines. *See United States v. Labeille–Soto*, 163 F.3d 93, 1998 WL 865122 (2d Cir.1998) (while the district court believed that the defendant was "getting hit pretty hard," the court nonetheless improperly designated the federal sentence as starting some 16 months

earlier so that the defendant could receive credit for part of an unrelated state sentence he had already served).

Since our original reasoning cannot support the order, we must consider the petitioner's two other arguments, which he has reiterated in his opposition brief to the reconsideration motion. In doing so, we need not resolve the due process argument because the claim based on *Brown, supra*, has merit.

In *Brown*, the Tenth Circuit held that because the defendant had spent such an extended period of time, 19 months, in federal detention on an ad prosequendum writ, that time had transmuted into federal custody and required the BOP to use that time in calculating the defendant's period of incarceration.

Brown was serving a California State sentence for sale of heroin. On March 9, 1983, he was released to federal authorities on an ad prosequendum writ so that he could be prosecuted on federal charges of conspiracy to distribute heroin. His state sentence expired on September 23, 1984. He remained in federal custody until October 5, 1984, when he made bail. He returned to federal custody on April 2, 1985, and was eventually convicted on June 4, 1985. 21 F.3d at 1008.

At his sentencing, he was given credit for all the time spent in federal custody before sentencing. The government did not appeal the sentencing order. Later, the BOP, in calculating his sentence, refused to give him credit for the time between March 9, 1983, the date federal authorities took him on the ad prosequendum writ, through September 23, 1984, the date his state sentence expired. *Id.* at 1008–09.

On appeal, the government relied on the general rule that time spent on an ad prosequendum writ is not time in federal custody because the defendant is merely being "borrowed" from state authorities, and legally he remains in state custody. *See Chambers v. Holland*, 920 F.Supp. 618, 622 (M.D.Pa.1996) (citing cases). Referring to one of its own cases that applied the general rule, *Hernandez v. United States Attorney General*, 689 F.2d 915 (10th Cir.1982), the Tenth Circuit

rejected the government's argument, reasoning:

Although the opinion in *Hernandez* is silent on this point, it appears that Hernandez was "on loan" under the writ for only the time necessary to sentence him. This short duration is typical of all the cases cited by Appellees and numerous other cases reviewed by this court. However, in the case presented herein Appellant was in federal prison pursuant to a writ for over a year and a half before he was released by the federal court on bond, and he was not even tried for his federal crimes for an additional seven months. Thus he was in federal control for over two years. Absent evidence to the contrary, we are unwilling to infer that a federal detention and control pursuant to a writ of habeas corpus ad prosequendum may last for such an extended period without the detention transmuting into custody.

*Id.* at 1075. The court continued:

We recognize that our holding is fact specific, and we are unwilling to announce a per se rule as to how long a state prisoner may be "on loan" to federal authorities without the authorities taking custody of the prisoner. Suffice it to say that absent a clear directive from the state authorities the nineteen-month detention by Appellees constitutes federal "custody" for purposes of § 3568.

*Id.*

■■■ The facts of the instant case are materially identical. On March 20, 1992, the United States took Rios from New York State custody pursuant to a writ of habeas corpus ad prosequendum. Such a writ is for the purpose of indicting, prosecuting and sentencing the defendant. *Flick v. Blevins,* 887 F.2d 778, 781 (7th Cir.1989). *Accord United States v. Jones,* 938 F.2d 447, 449 (3d Cir.1991). Yet Rios remained in federal custody until January 31, 1994, the date of his sentencing, more than a year and one-half after his trial in June 1992. As in *Brown,* we adopt no per se rule, but this lengthy period, totaling 22 months, like the 19–month period there, constitutes federal custody for the purpose of his sentence calculation.

In opposition to petitioner's reliance on *Brown,* respondent cites only *Chambers,* which he argues "is exactly on point with this case." However, *Chambers,* at most, is merely an application of the general rule and did not deal with a lengthy period of federal detention as we do here. Moreover, it is not clear from *Chambers* just how long the defendant there had been borrowed from state authorities; the memorandum only states that the defendant had remained in state custody prior to his federal sentencing date. 920 F.Supp. at 622.

The only difficulty with applying *Brown* here is that *Brown* dealt with 18 U.S.C. § 3568, the now repealed predecessor section to 18 U.S.C. § 3585, the section that governs Rios' sentence calculation. In *Brown,* the Tenth Circuit noted it did not have to consider the effect of the new language in section 3585 because Brown's case was controlled by the old section. 21 F.3d at 1009.

The language of the two sections differ sufficiently that it could be argued that *Brown* should not guide the outcome here. Section 3568 allowed credit "for any days spent in custody in connection with the offense or acts for which sentence was imposed" and did not specifically prohibit double credit, as noted, credit on both the federal and state sentences for the same period of time spent in custody before the federal sentencing. Conversely, section 3585(b), in pertinent part, more broadly allows credit for "any time ... spent in official detention" before sentencing but specifically prohibits credit for time "credited against another sentence."

The argument against applying *Brown* here would focus on the new statutory prohibition of double credit. Unlike in *Brown,* where section 3568 did not prohibit double credit, section 3585(b) does, and since Rios received credit for the 22–month period on his New York State sentence, it could be argued that section 3585(b) prohibits credit here. As the respondent notes, the Supreme Court has stated that by enacting section 3585(b), "Congress made clear that a defendant could not receive a double credit for his detention time." *Wilson, supra,* 503 U.S. at 337, 112 S.Ct. at 1355–56, 117 L.Ed.2d at 602.

Review of the cases interpreting section 3568 indicates that the argument has no merit. The prohibition on double credit in section 3585(b) appears to be merely a statutory codification of the judicial interpretation of section 3568. (The legislative history is not helpful. *See* S.Rep. No. 98–225 at 129, *reprinted in* 1984 U.S.C.C.A.N. 3182, 3312.) Courts denied double credit under the old law. *See Schrader v. Perrill*, 13 F.3d 406 (10th Cir.1993) (unpublished disposition at 1993 WL 503172); *United States v. Grimes*, 641 F.2d 96 (3d Cir.1981); *Doyle v. Elsea*, 658 F.2d 512 (7th Cir.1981); *United States v. Downey*, 469 F.2d 1030 (8th Cir.1972).

Significantly, the refusal to grant double credit did not mean that the courts refused to grant "meaningful credit" when the situation demanded it. *Doyle, supra*, 658 F.2d at 515, n. 5. in that regard, *Doyle* noted that in essence double credit could be granted under *Willis v. United States*, 438 F.2d 923 (5th Cir.1971) (a so-called *Willis* credit), the same case we cited in our original memorandum for the proposition that double credit is sometimes awarded despite the seemingly contradictory language in section 3585(b).

As to *Wilson's* statement about section 3585(b)'s prohibition of double credit, it is dictum; the case really dealt with whether a district court at sentencing could grant credit under section 3585(b) or whether the BOP retained that authority. While the Court resolved that issue in favor of the BOP, we are in a different procedural context here; we are reviewing under 28 U.S.C. § 2241 the BOP's decision on credit to determine if the BOP properly exercised its authority, as *Wilson* itself acknowledged we could do. *Wilson, supra*, 503 U.S. at 335–36, 112 S.Ct. at 1355, 117 L.Ed.2d at 601. *See also United States v. Brann*, 990 F.2d 98 (3d Cir.1993).

We make one final observation. In *Brown*, the government argued, relying on *Wilson, supra*, that the district court's award of credit could not be honored because it had no authority to grant credit at sentencing. The Tenth Circuit rejected this argument by noting that the government had failed to appeal the court's sentencing order allowing the credit. In those circumstances, the BOP could not:

unilaterally eliminate the credit by administrative action and increase a term once it has been provided expressly by the sentencing court. If the [BOP] felt that its power had been improperly usurped by the trial court by the granting of the credit, then the requisite course of action was to appeal the decision, not simply alter the sentence in accord with the [BOP's] analysis of what was the correct sentence.

*Brown, supra*, 28 F.3d at 1075–76 (brackets added). Likewise, in the instant case, the government failed to appeal the court's sentencing order even though the court announced at the sentencing hearing its intention to grant credit for time served and included that instruction in its sentencing order. The government should have appealed the sentence if it believed it was erroneous.

Since the respondent concedes that if the 22–month period is taken into account, the petitioner should no longer be incarcerated, we will issue an order requiring his immediate release from the federal sentence under which he is being held.

### ORDER

AND NOW, this 1st day of February, 1999, upon consideration of the respondent's motion for reconsideration, it is ordered that:

1. The motion for reconsideration is denied.

2. The December 23, 1998 stay of our order of December 8, 1998, is vacated.

3. The petitioner, Francisco Rios', current custodian shall immediately release him from the federal sentence under which he is currently being held. If the petitioner has no other sentence to serve or no detainer pending against him, the custodian shall immediately release the petitioner from custody.

4. The Clerk of Court shall close this file.