**UNITED STATES of America, Plaintiff,**

v.

**Miguel FLORES, Defendant.**

**No. 02–CR–289 TC.**

United States District Court, D. Utah, Central Division.

Aug. 1, 2002.

Leshia Lee–Dixon, Asst. U.S. Attorney, Salt Lake City, UT, for Plaintiff.

Fred Metos, Esq., Salt Lake City, UT, for Defendant.

## MEMORANDUM AND ORDER

BOYCE, United States Magistrate Judge.

Defendant, Miguel Flores, has been indicted in a First Superceding Indictment (File Entry # 73) with multiple counts. Count I charges him with conducting the

affairs of an enterprise, the King Mafia Disciples, an organized gang, through a pattern of racketeering in violation of 18 USC § 1962(c) the Racketeering Influenced Corrupt Organization Act (RICO). Count II charges a conspiracy to violate 18 USC § 1962(c) by a violation of 18 USC § 1962(d) (RICO Act). Count III charges a violation of 18 USC § 924(c) by the use of a firearm in the commission of murder in violation of 18 USC § 1111. Count IV charges racketeering by murder under 18 USC § 1959(a)(5), the murder was in violation of Utah Code § 76–5–202. Count V charges the murder of a rival gang member, thereby committing a racketeering act under 18 USC § 1959(a)(1). The charges carry possible life sentences. The King Mafia Disciples (KMD) is a gang operating in Utah and within Utah correctional institutions. It provides protection and security in Utah correctional institutions. The organization is highly structured and a close group with strong internal discipline and member restrictions enforceable by physical injury and death. The indictment sets out details of the organization and its functions including commission of serious crimes. The fact that members of the KMD were imprisoned, did not prevent them from allegedly committing or causing crimes outside of prison, including murder and other offenses. The prison security environment did not secure against commission of offenses on the inside and outside. Thus networking between KMD prisoners and others on the outside to commit offenses is a serious and alleged reality. The indictment provides probable cause for its allegations.

The defendant Miguel Flores was, prior to the instant charges, an inmate confined at the Utah State Prison (USP) at Draper, Utah, for the crimes of murder and arson. He was confined in a maximum security unit and appeared in court to answer the indictment on authority of a writ of habeas corpus ad prosequendum (File Entry # 20). Defendant waived his rights under the Interstate Agreement on Detainers (IAD) and was returned to the custody of the Warden of the Utah State Prison. On arraignment on the First Superseding Indictment, Flores requested to remain in custody of the United States Marshal Service (USMS) which was granted (File Entry # 103, # 105). The waiver previously executed under the IAD was withdrawn. The court found by clear and convincing evidence that defendant was a flight risk, a danger to the safety of others, (see *United States v. On Lee*, 208 F.3d 228, 2000 WL 228263 (10th Cir.2000)), and to the community (File Entry # 105). He was ordered detained under 18 USC § 3142(e) in the custody of the USMS.

In an allied matter, the Government presented evidence for a material witness order, under 18 USC § 3144. Evidence was presented that a major Government witness had been identified by the KMD and viciously attacked and stabbed. There was a representation that the Government feared further injury and threats to witnesses which could obstruct the prosecution. See 18 USC § 1513, 1512. The court, at the Government's request, entered an order placing restrictions on the defendant Flores' activities while in confinement to prevent or reduce the opportunity for communications in confinement and to outsiders that could obstruct justice but still allow free communication with counsel and communication with others by mail.

The restrictions imposed tight security (to be determined by the USMS or other correctional official). There were authorizations for examination of mail and restrictions on telephone calls other than to counsel.

The defendant, who came before the court on a writ of habeas corpus ad prosequendum, is still a convicted state prisoner. The writ ad prosequendum grants the United States temporary custody of the defendant. *United States v. Mauro,* 436 U.S. 340, 341–342, 98 S.Ct. 1834, 56 L.Ed.2d 329 (1978); *United States v. Waldrup,* 42 Fed.Appx. 367, 2002 WL 1481265 (10th Cir.2002); *Hernandez v. U.S. Attorney General,* 689 F.2d 915, 918 (10th Cir.1982) (defendant who appears on a writ ad prosequendum continues "to be a state prisoner"); *United States v. Londono,* 285 F.3d 348, 356 (5th Cir.2002); *United States v. Fermin,* 252 F.3d 102 (2nd Cir.2001). The writ does not change the fact that defendant is a convicted prisoner. The defendant's constitutional claims about the restrictions on him are to be addressed to defendant as a sentenced prisoner.

To allow otherwise would enable a sentenced prisoner, thereafter charged in federal court, to remain in federal custody and claim the status of a pretrial detainee with a loosening of security. However, under *Bell v. Wolfish, infra,* the consideration and conclusion of the issues in this case would be the same whether defendant was a sentenced prisoner or a pretrial detainee.

Therefore, the court considered defendant's conditions of confinement not to be atypical to a sentenced prisoner within *Sandin v. Conner,* 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995); *Penrod v. Zavaras,* 94 F.3d 1399, 1406 (10th Cir. 1996), and not to be punishment but administrative restrictions to avoid obstruction of justice, *Bell v. Wolfish,* 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979); *Martucci v. Johnson,* 944 F.2d 291, 293–94 (6th Cir.1991); *Barney v. Pulsipher,* 143 F.3d 1299, 1312–13 (10th Cir.1998); *Resnick v. Hayes,* 213 F.3d 443 (9th Cir.2000), and reasonably related to legitimate penological and other compelling governmental interests. *Turner v. Safley,* 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987).

Flores has not objected to some of the restrictions. A hearing was held on Flores' objections and the court has concluded some modifications are reasonable, but that others should remain in effect.

■ Defendant does not challenge his secure custody, which is no more severe than that imposed at the U.S.P. when defendant was held at the UTAH STATE PRISON He was held there in a maximum security unit. The court has not directed the specific terms of custodial security, this is in the judgment of the USMS and the Sheriff of the Salt Lake County Adult Detention Center (ADC) where Flores is confined. The purpose is to limit the opportunity that defendant has to "network" threats or other obstructive conduct to other KMD members or prisoners who could pass on information or directions that would seriously obstruct justice. A prisoner has no general right to access to other prisoners *Hewitt v. Helms,* 459 U.S. 460, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983); *Jones v. North Carolina Prisoners' Labor Union, Inc.,* 433 U.S. 119, 125–26, 97 S.Ct. 2532, 53 L.Ed.2d 629 (1977).

"[T]ransfer of an inmate to less amiable and more restrictive quarters for nonpunitive is well within the terms of confinement contemplated by a prison sentence ... Accordingly, administrative segregation is the sort of confinement that inmates should reasonably anticipate receiving at some point in their incarceration." *Hewitt, Id.* at 468, 103 S.Ct. 864. See *Bell v. Wolfish, supra,* 441 U.S. 520 at 547, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). In *Hewitt* the court noted "the prison officials believed that it was wise to separate respondent from the general population until completion of state and institutional investigation ... Likewise, the isolation of a

prisoner pending investigation of misconduct charges against him serves important institutional interest relating to the insulating of possible witnesses from coercion or harm," also *Id.* at 476, 103 S.Ct. 864. The same considerations are applicable here. "During the period of confinement in prison, the right of intimate association, 'a fundamental element of personal liberty is necessarily abridged'." See also, *Gerber v. Hickman*, 291 F.3d 617, 621 (9th Cir. 2002); see also *N.E.W. & C.M.W. v. Kennard*, 952 F.Supp. 714, 719 (D.Utah 1997); *Thorne v. Jones*, 765 F.2d 1270, 1274 (5th Cir.1985) (holding incarcerated individuals maintain no right to physical association).

■ It is also concluded the security confinement is justified, in this case, by reasonable legitimate penological and governmental interests when all factors in this case are considered and balanced. *Turner v. Safley, supra* at 89, 107 S.Ct. 2254; *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 107 S.Ct. 2400, 96 L.Ed.2d 282 (1987); *Beerheide v. Suthers*, 286 F.3d 1179, 1184 (10th Cir.2002). The facts of this case require special controls to prevent communications to obstruct justice and harm witnesses. See general discussion in *Yousef v. Reno*, 254 F.3d 1214 (10th Cir.2001). Defendant is granted full access to counsel by mail and telephone. The only telephone restriction is for correctional staff to place the original call to make sure it is to defendant's attorney and the call is not monitored. Counsel has full visitation access to defendant. Mail is not restricted except as the institution (ADC) may impose under *Wolff v. McDonnell*, 418 U.S. 539, 577, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974).

■ Defendant's correspondence with third persons is not restricted by censorship, although, the mail will be read for threats, conspiracy criminal plots, or obstruction efforts. *Gassler v. Wood*, 14 F.3d 406 (8th Cir.1994) (prison officers are justified in reading inmate's outgoing mail for information regarding future criminal activity). This is justified considering the special circumstances applicable in this case and the ability of KMD members to act outside prison, as a gang and a threat. There is no violation of defendant's constitutional rights by these mail restrictions. *Beville v. Ednie*, 74 F.3d 210, 213 (10th Cir.1996); *United States v. Gordon*, 168 F.3d 1222 (10th Cir.1999).

■ Defendant's most seriously expressed objection is the denial of visitation. The Supreme Court has never held a prisoner has an absolute right to visitation, John Boston and Daniel E. Manville, *Prisoners' Self–Help Litigation Manual*, Third Ed. p. 173 (1995); Michael Mushlin, *Rights of Prisoners*, 2nd Ed. p. 89–90 (1993). There is no right of a prisoner to unfettered visitation *Kentucky Department of Corrections v. Thompson*, 490 U.S. 454, 460, 109 S.Ct. 1904, 104 L.Ed.2d 506 (1989); *Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir.1998). See also *Hewitt v. Helms*, 459 U.S. 460, 468, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983); *Block v. Rutherford*, 468 U.S. 576, 104 S.Ct. 3227, 82 L.Ed.2d 438 (1984). The restriction here is to prevent obstructions and criminal actions by outside KMD members or sympathizers on direction by a defendant through sympathetic visitors. See *Caraballo–Sandoval v. Honsted*, 35 F.3d 521 (11th Cir.1994) (restriction of female member visitation to prevent criminal actions in passing contraband). It should be kept in mind the KMD breached U.S.P. security. After hearing, the court has concluded defendant could be allowed visitation with the one person that he requested, upon the giving of notice as to the person and identifying

information to the USMS. This is a fair balance of the interests involved.[1] This restriction and allowance is reasonable under the circumstances. *Kikumura v. Hurley,* 242 F.3d 950 (10th Cir.2001) (number of visitors may be restricted). It is what defendant generally requested, at hearing on this issue.

 Telephone restrictions placed on defendant, other than as to access to counsel, are proper for security purposes. This is the means least subject to control and monitoring and the means most effective for communicating retaliatory and obstruction of justice directions to others. The defendant may still use the mail. Restrictions on telephone access, including a prohibition, may be imposed under *Turner v. Safley, supra,* where reasonably justified for legitimate penological or governmental reasons, including serious security needs. *United States v. de Soto,* 885 F.2d 354, 363–64 (7th Cir.1989) (trying to kill prosecution witness; denial of telephone use except as to counsel upheld). Therefore, this restriction will not be changed, however, counsel may ask the court, on notice to the prosecution, for a special circumstance exception that may be justified under the facts presented.

One additional matter warrants clarification. The right to access to counsel in person at the jail, includes counsel's investigator or other special assistants. Giving notice to the USMS of the identity of the investigator or other persons to have contact with defendant will facilitate their access.

The court's previous order is hereby modified in part and the objections otherwise overruled. This order will partially supersede the prior order.

**IT IS SO ORDERED.**

---

1. Visitation may be weekly on Fridays or otherwise as the U.S. Marshal determines proper.